1

2

Monique Olivier (SBN 190385)
(monique@dplolaw.com)

3

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800

4

San Francisco, CA 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556

5

6

Kathryn Landman Bain (SBN 260465)
(katie@landmanmazza.com)

7

LANDMAN & MAZZA LLP
951 Mariners Island Blvd., Ste. 300

8

San Mateo, CA 94404
Telephone: (650) 378-1472
Facsimile: (650) 763-3933

9

10

Attorneys for Plaintiff and the Putative Class

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14

YVETTE R. BALDERAS, on behalf of
herself and all others similarly-situated,

CASE NO.  3-12-cv-06327-NC

15

Plaintiffs,

**PLAINTIFF'S NOTICE OF MOTION AND**

16

v.

**MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT,
APPROVAL OF CLASS NOTICE, AND**

17

MASSAGE ENVY FRANCHISING, LLC

**CLASS CERTIFICATION**

18

and ENVEE ESTEP ENTERPRISE, INC.
dba MASSAGE ENVY OF ALAMEDA

19

TOWNE CENTRE; and DOES 1 TO 10,
inclusive,

Date:  January 29, 2014
Time: 1:00 p.m.

20

Defendants.

21

22

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

23

**PLEASE TAKE NOTICE** that on **January 29, 2014**, at **1:00 p.m.** Plaintiff Yvette

24

Balderas will and hereby does move the Court for an order:

25

1.      Granting preliminary approval of the Settlement reached between Plaintiff and

26

defendant Massage Envy Franchising LLC ("MEF") (together, the "Parties"), which is recited in

27

28

the Settlement Agreement attached as **Exhibit 1** to the Declaration of Monique Olivier (the "Agreement");

  2. Certifying, for settlement purposes only, the Class specified in the Agreement;

  3. Establishing a schedule for the dissemination of Notice to Class Members and the deadlines for Class Members to object to or opt out of the Settlement;

  4. Approving Duckworth Peters Lebowitz Olivier LLP and Landman & Mazza LLP as Class Counsel and Plaintiff Yvette R. Balderas as Class Representative;

  5. Scheduling a hearing on final approval of the Settlement at which Class Members may be heard, including final approval of Class Counsel's application for an award of fees and costs and Class Representative's request for an enhancement award;

  6. Approving KCC Class Action Services, LLC ("KCC") as the Settlement Administrator; and

  7. Granting the preliminary approval order substantially in the form as the document attached as Exhibit D to the Agreement.

  This Motion is brought pursuant to Rule 23(e), Fed. R. Civ. P., and is based upon this Notice of Motion, the Memorandum of Points and Authorities below, the Declarations of Monique Olivier and Luanne Sacks submitted herewith and the exhibits attached thereto, and the germane court record.

Dated:  January 13, 2014.     DUCKWORTH PETERS LEBOWITZ
            OLIVIER LLP

            LANDMAN & MAZZA LLP

            BY:   */s/ Monique Olivier*
             Monique Olivier

            Attorneys for Plaintiff
            and the Putative Class

1                                         **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**       **INTRODUCTION**

3         Plaintiff and MEF have reached a proposed settlement resolving all of Plaintiff's claims

4 against MEF (the "Settlement"), but only against MEF.  Specifically, Plaintiff claims that MEF is

5 a joint employer and enacted policies that caused her and putative Class Members to pay for

6 certain business expenses that should have been borne by the employer in violation of California

7 law.  Although Plaintiff is generally confident of the merits of her claims, she recognizes the

8 uncertainty and risk of continuing to litigate, seeking certification of the class, and taking the case

9 to trial.  Likewise, although MEF is generally confident of its defenses to Plaintiff's claims and

10 believes that Plaintiff's expected class certification motion would be denied, MEF recognizes that

11 uncertainty exists and that further litigating this matter will likely be protracted.  These

12 circumstances prompted Plaintiff and MEF to work together to reach a resolution of their

13 disputes.  The Settlement does not resolve or release any claims that Plaintiff or the Putative Class

14 Members may have against Defendant Envee Estep Enterprise, Inc. dba Massage Envy of

15 Alameda Towne Centre ("Estep") or any franchise of Defendant MEF located in the state of

16 California (collectively, the "California Franchises").

17         Under the terms of the Settlement, MEF has agreed to substantial injunctive and monetary

18 relief.  Specifically, MEF will create a fund from which settlement class members who timely

19 submit a qualifying claim form will be eligible to receive a share of the fund.  MEF has also

20 agreed to the entry of an injunction whereby MEF will continue to ensure that certain of its

21 materials distributed to its California franchisees confirm, among other issues, that MEF does not

22 dictate the insurance requirements of any employees at any of the clinics or spas operated by its

23 California Franchises.  MEF also will ensure that any job descriptions for massage therapists that

24 MEF may provide to its California Franchises do not require that massage therapists pay for their

25 own professional liability insurance.  MEF will further continue with its policy implemented in

26 January 2013 that massage therapists are not required to carry their own private liability

27 insurance.  Finally, MEF will provide a copy of California Labor Code § 2802 to each of its

28 California Franchises and inform them that they need to be familiar with its requirements and will

1   continue to inform and emphasize to its California Franchises that MEF expects them to be

2   familiar with and comply with applicable federal and state employment laws.

3        MEF has agreed to pay Class Counsel's fees and costs awarded by this Court in an

4   amount not to exceed $175,000. MEF has further agreed to pay Plaintiff and Class

5   Representative Yvette Balderas a modest enhancement award not to exceed $4,000 for her

6   prosecution of the class claims. The substantive terms of the Settlement are described in Section

7   III below and are recited in the Agreement which is **Exhibit 1** to the Declaration of Monique

8   Olivier ("Olivier Decl.").

9        As set forth more fully below, the proposed Settlement is within the range of possible

10  settlements warranting final approval and it is therefore worthwhile to provide notice to the Class

11  (identified below and defined in the Agreement) of the Settlement and to schedule a formal

12  fairness hearing. All factors for the Court to consider, including the strengths and weaknesses of

13  Plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of

14  obtaining and maintaining class action status through trial, the terms of the Settlement, the extent

15  of discovery completed and the stage of the proceedings, and counsel's experience and views

16  weigh in favor of preliminary approval. The Settlement, taken as a whole, is fair, reasonable, and

17  adequate to all concerned and, as such, merits certification of a settlement class and preliminary

18  approval of a classwide settlement.

19  **II.    FACTUAL AND PROCEDURAL HISTORY**

20       On October 5, 2012, Plaintiff, a massage therapist who briefly worked at a California

21  Franchise, filed this action asserting claims on her own behalf and those of the putative class that

22  massage therapists were unlawfully required to bear the cost of professional liability insurance

23  and/or the cost of state or local licensing or certification as a massage therapist or related

24  expenses, that such business expenses were not reimbursed and/or were improperly deducted

25  from wages, and that massage therapists were required to patronize a third party, including claims

26  under Labor Code §§ 201, 202, 203, 221, 223, 224, 450, 2802, California Code of Civil

27  Procedure 1021.5, and Business & Professions Code § 17200, *et seq.*, with respect to MEF.

28  (Olivier Decl., Exh. 2 (Complaint).) Plaintiff claimed that MEF is liable to her and the putative

1   Class Members because either MEF jointly employed her and the putative Class Members or is

2   vicariously liable for its California Franchises' conduct. (*Id.* ¶¶ 1-9.) According to Plaintiff, this

3   conduct was in violation of certain provisions of California's Labor Code. (*Id.* ¶¶ 17-55.)

4   Plaintiff sought to represent a class of all massage therapists who worked for any California

5   Franchise since October 15, 2008. (*Id.* ¶ 11.)

6       Estep did not retain counsel and on April 23, 2013, default was entered against Estep.

7   (Dkt. 19.) Thereafter, Plaintiff and MEF exchanged initial disclosure statements, interrogatories,

8   and document requests. (Olivier Decl. ¶ 8; Declaration of Luanne Sacks ("Sacks Decl.") ¶ 6.)

9   MEF has produced thousands of pages of documents. (Olivier Decl. ¶ 8; Sacks Decl. ¶ 6.) On

10  September 3, 2013, and again on September 12, 2013, David Estep, co-owner of Estep, was

11  deposed by both Plaintiff and MEF. (Olivier Decl. ¶ 8; Sacks Decl. ¶ 6.)

12      On October 30, 2013, Plaintiff and MEF participated in an all-day mediation in San

13  Francisco, California, before JAMS mediator Martin Quinn. (Olivier Decl. ¶ 12; Sacks Decl.

14  ¶¶ 7-8.) Although the parties made significant progress during the day-long negotiation, they

15  were not able to then reach a settlement. (Olivier Decl. ¶ 12; Sacks Decl. ¶ 8.) In the days

16  immediately following the mediation, the parties continued to engage in settlement discussions

17  (with the assistance of mediator Quinn). (Olivier Decl. ¶ 12; Sacks Decl. ¶ 8.) As a result of

18  those continued discussions, the parties were able to reach a settlement and on or about

19  November 13, 2013, executed a Term Sheet reflecting the terms of the Settlement. (Olivier Decl.

20  ¶ 12; Sacks Decl. ¶ 8.) The Parties have since finalized the terms of the Settlement in the

21  Agreement, which was executed on January 13, 2014, attached as **Exhibit 1** to the Olivier

22  Declaration.

23  **III.    SUMMARY OF SETTLEMENT TERMS**

24      The complete terms of the Settlement are set forth in the Agreement attached as **Exhibit 1**

25  to the Olivier Declaration. A summary of the key terms follows:

26      **A.    The Class and Settlement Class**

27      The Parties have agreed on a Class defined as:

28

**[A]ll Massage Therapists who worked at one or more California Massage Envy franchises at any time during the Class Period.**

(Agreement § I.F.)

The Class Period is defined as:

[T]he time period **between October 15, 2008, and the date the Court grants Preliminary Approval of the Settlement.**

(Agreement § I.J.)  The parties have agreed on a Settlement Class defined as:

**All members of the Class who have not excluded themselves from the Settlement by filing a timely written request for exclusion in accordance with the requirements set forth in the Class Notice.**

(Agreement § I.GG.)

**B.     Payment to the Settlement Class**

Under the Settlement, the Class will share in a Settlement Fund of Five Hundred Four Thousand Dollars ($504,000), less (i) any enhancement award to Plaintiff and (ii) any fee and expense award to proposed Class Counsel—the remainder being the "Net Class Benefit."  If the Court grants the enhancement award and the fee and cost award in the amounts detailed herein, the Net Class Benefit will be no less than Three Hundred Twenty-five Thousand Dollars ($325,000).  (Olivier Decl. ¶ 14; Sacks Decl. ¶ 10.)

At present, the Parties estimate that there are approximately 12,000 Class Members.  (Olivier Decl. ¶ 11; Sacks Decl. ¶ 14.)  Each Class Member will be eligible to receive a Settlement Benefit representing a share of the Net Class Benefit.  (Olivier Decl. ¶¶ 14-15; Sacks Decl. ¶ 11.)  The Settlement Administrator shall distribute the Net Class Benefit as follows:

(a)     each Class Member who claims (s)he paid for professional liability insurance shall be entitled to receive up to $150 per year for not more than two years (i.e., a maximum of up to $300);

(b)     each Class Member who claims (s)he paid for an application for the California Massage Therapy Council Certification or a city or county required license or certification shall be entitled to receive up to $150; and

1          (c)      each Class Member who claims (s)he paid for a LiveScan in conjunction with

2 California Massage Therapy Council Certification or a city or county required license or

3 certification shall be entitled to receive up to $80.

4 (Agreement § III.9.D.ii.) Should the amount claimed by Class Members be greater than or less

5 than the amount of the Net Class Benefit, the Settlement Administrator shall prorate the amount

6 distributed from the Net Class Benefit among the Class Members according to the amounts

7 claimed. (*Id.*)

8        Distribution of any Settlement Benefit shall not be considered wages and, if appropriate,

9 the Settlement Administrator shall issue each member of the Settlement Class who receives a

10 Settlement Benefit a Form 1099 reflecting such distribution. (*Id.* § III.9.D.iii.) Each member of

11 the Settlement Class shall agree that (s)he alone is responsible for the tax consequences, including

12 any penalties or interest, relating to the receipt of any distribution from the Settlement Fund (i.e.,

13 Settlement Benefit). (*Id.*) No amount of the Settlement Fund will revert back to MEF, except

14 that the amount of any checks issued to the Settlement Class Members but not cashed within 180

15 days of issuance shall be given to MEF. (*Id.* § III.9.D.v-vi.)

16        To receive a Settlement Benefit, Class Members will be required to complete a claim

17 form, which will provided as part of the Class Notice. (Olivier Decl. ¶ 17; Sacks Decl. ¶ 11.) All

18 claim forms must be completed in their entirety and signed to be considered valid. (Olivier Decl.

19 ¶ 17; Sacks Decl. ¶ 11.) Any valid claim form timely postmarked and approved and accepted by

20 the Settlement Administrator shall be considered a "Qualified Claim." (*See* Agreement § I.BB.)

21 Checks will be mailed to Settlement Class Members who submit a Qualified Claim within 21

22 days of the Effective Date of the Settlement. (*Id.* § III.9.D.iv.)

23      **C.**     **Injunctive Relief**

24        MEF has also agreed to the entry of an injunction that will benefit Class Members. The

25 proposed injunction contains the following substantive terms:

26      1.      MEF will continue with its policy implemented in January 2013 that massage

27 therapists employed by its California Franchises are not required to carry professional liability

28 insurance. (Agreement § III.10.A.)

2.      MEF will continue to ensure that materials distributed to its California Franchises in no way state or imply that MEF seeks to dictate or does dictate the insurance requirements of any employee at any California Franchise.  (*Id.* § III.10.B.)

3.      MEF will ensure that any sample job descriptions for massage therapists that MEF may be provide to its California Franchises do not require that massage therapists pay for their own professional liability insurance.  (*Id.* § III.10.C.)

4.      MEF will continue to inform and emphasize to the California Franchises that MEF expects its California Franchises to be familiar with and comply with applicable federal and state employment laws.  (*Id.* § III.10.D.)

5.      MEF will provide a copy of Labor Code § 2802 to all California Franchises and inform them that they need to be familiar with its requirements.  (*Id.* § III.10.E.)

**D.      Enhancement Award and Attorneys' Fees and Costs**

A $4,000 enhancement award to Plaintiff is warranted because of her efforts on the putative class's behalf.  (Olivier Decl. ¶ 32.)  MEF agrees not to object to an enhancement award to Plaintiff up to Four Thousand Dollars ($4,000), and agrees to pay any amount awarded as an enhancement award to Plaintiff up to a maximum of Four Thousand Dollars ($4,000).  (Olivier Decl., Ex. A, § VII.23.)  In exchange, Plaintiff will execute a general release, in MEF's favor, in the form and substance of the General Release attached as Exhibit A to the Agreement.  (*Id.*)

In addition, Plaintiff's counsel intends to ask the Court for an award of attorneys' fees and costs and has agreed that the fees and costs requested shall not collectively exceed One Hundred Seventy-five Thousand Dollars ($175,000.00).  (*Id.* ¶ 28.)  This amount is substantially less than the amount of fees actually incurred by Plaintiff's counsel.  (*Id.* ¶ 27-28.)  MEF has agreed not to object to Plaintiff's counsel's request for fees and costs and has agreed to pay any fees and costs awarded to Plaintiff's counsel, provided such award of fees and costs does not exceed One Hundred Seventy-five Thousand Dollars ($175,000.00).  (Sacks Decl. ¶ 25; Agreement ¶ VII.22.)

**E.      Release of Claims**

As part of the Settlement, the Settlement Class will release MEF from all Settled Claims (as defined in the Agreement) and will provide a waiver pursuant to California Civil Code § 1542

1  solely with respect to the Settled Claims.  (Agreement § VIII.24-25.)  Plaintiff and the Class will

2  retain their claims against Estep and the Class Members will retain any and all claims against any

3  California Franchise that may exist.  (*Id.* § VIII.25.)

4        **F.**     **Notice and Right to Opt Out**

5        The Settlement Administrator (i.e., KCC) shall administer direct notice to the Class.  (*Id.*

6  § IV.11.B-C.)  The proposed form of notice is attached as **Exhibit B** to the Agreement.  (Olivier

7  Decl., Ex. B to Ex. 1.)  MEF shall pay all expenses related to notice and tasks the Settlement

8  Administrator performs.  (*Id.* § III.9.C.)  MEF will request that the California Franchises provide

9  directly to the Settlement Administrator a list of current and former employees who are potential

10  Class Members and their respective contact information.  (*Id.* § IV.11.A.)  The Class Members'

11  names and contact information will not be shared with any other person or entity, including

12  Plaintiff, the California Franchises, MEF, MEF's Counsel, or Class Counsel, and are for the

13  limited purpose of assisting KCC to provide notice to the Class.  (*Id.* § IV.11.I.)  After receiving

14  the Class Members' names and contact information, the Settlement Administrator will send notice

15  to the Class Members via first-class mail.  (*Id.* § IV.11.C.)  The Settlement Administrator will

16  perform at least one Skip Trace on any notice returned as undeliverable, and will send notices to

17  any newly obtained addresses.  (*Id.*)

18        The Class will also receive publication notice through a comprehensive and dedicated

19  website created by the Settlement Administrator; the website will provide information regarding

20  the Settlement and include all relevant settlement materials.  (Agreement § IV.11.F.)  The

21  proposed website template is attached as **Exhibit C** to the Agreement.  The Settlement

22  Administrator will file a declaration of compliance with the Court affirming that it has completed

23  the tasks assigned to it by the Court and under the Agreement.  Class Members will be afforded

24  approximately sixty (60) days to elect to opt out from the Settlement or to file an objection.

25  (Agreement § IV.12.A-B.)

26        If more than two percent (2%) percent of the total number of Class Members to whom

27  notice was mailed request to exclude themselves from the Settlement, MEF shall have the option,

28  at its sole discretion, of canceling the Settlement in its entirety; provided, however, that MEF

must notify Class Counsel and the Court that it is exercising such option within approximately seven (7) days after being notified by the Settlement Administrator of the number of Class Members who have timely requested exclusion.  (*Id.* § VI.21.)

## IV.   THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.   Applicable Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action shall not be dismissed or compromised without the approval of the court after "a hearing and on finding that the [compromise] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  However, on preliminary approval, the court does not make a full and final determination regarding fairness. "Because class members will subsequently receive notice and have an opportunity to be heard," the court "need not review the settlement in detail at this juncture." *In re ML. Stern Overtime Litig.*, 2009 WL 995864, *3 (S.D. Cal. 2009).  "[I]nstead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.* (citing Newberg on Class Actions, § 11.25 (4th ed. 2002)); *see also* Manual for Complex Litigation Fourth § 21.632 (2009).  Accordingly, the issue presently before this Court is "whether the settlement is within the range of possible approval, such that there 'is [a] reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *Id.* (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980).

The Ninth Circuit has articulated six factors relevant to evaluation of the fairness of a class action settlement at the preliminary approval stage: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored.  By their very nature, because of the uncertainties of

outcome, difficulties of proof, and lengthy duration, class action suits readily lend themselves to compromise.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[p]articularly in class action suits, there is an overriding public interest in favor of settlement").  Moreover, the Court should give a presumption of fairness to arm's-length settlements reached by experienced counsel.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

As shown herein, the Settlement is the result of arm's-length negotiations amongst experienced counsel.  (Olivier Decl. ¶¶ 23-25; Sacks Decl. ¶ 5.)  In light of the substantial risks that both parties faced if the litigation continues, the Settlement represents a more than satisfactory result for the Class.  The Settlement should be preliminarily approved.

**B.      The Strength of Plaintiff's Case and the Risk of Maintaining Class Action Status**

Every class action—indeed, nearly every case—involves some level of uncertainty with respect to the outcome on the merits.  Settlement resolves that inherent uncertainty and is therefore strongly favored by the courts, particularly in class actions.  *See Van Bronkhorst*, 529 F.2d at 950; *Cotton*, 559 F.2d at 1331.  This class action is not unique in that regard: Plaintiff and MEF strongly disagree regarding the merits and there is substantial uncertainty concerning class certification and the the ultimate outcome of the action.

In addition, there is disagreement as to whether Plaintiff would be able to establish that MEF is a joint employer with its franchisees under any of the tests for employment outlined in *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010).  In particular, there is substantial disagreement as to whether MEF exercised the requisite control over Class Members to establish the employment relationship.  There is also disagreement as to whether MEF could be held vicariously liable under an agency theory.  Thus, whether Plaintiff can establish MEF's liability to Plaintiff and the Class is uncertain.  Accordingly, preliminary approval is appropriate to avoid the uncertainties of continued litigation.

**C.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiff and MEF recognize the substantial risks associated with further litigation through trial and through appeals.  (*See* Olivier Decl. ¶¶ 24-25; Sacks Decl. ¶ 18.)  In particular, Plaintiff is aware of the following risks inherent in further litigation: (1) whether the Court will grant class certification; (2) whether Plaintiff will establish MEF's liability to Plaintiff and the Class; and (3) the potential delay in providing monetary and injunctive relief to the Class as a result of the continued litigation and the likelihood of appeals and cross-appeals.  Although MEF believes an award against it is unlikely and that it is unlikely that a class would ever be certified given the predominance of individual issues, MEF acknowledges that a risk exists that a class would be certified against it and that it ultimately could be held liable for any harm suffered by Plaintiff and/or the Class Members.  (Sacks Decl. ¶ 18.)  Plaintiff and MEF thus patently face the *certainty* that further litigation would be expensive, complex, and time consuming.  (*See* Olivier Decl. ¶ 24-25; Sacks Decl. ¶ 18.)

**D.      The Benefit of the Settlement to the Class**

In evaluating the settlement, the Court is guided by whether the settlement is fair and reasonable.  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  *Hanlon*, 150 F. 3d 1027.  The issue is not whether settlement could have been better in some fashion, but whether it is fair.  "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Id.*

Under this Settlement, the gravamen of Plaintiff's complaint against MEF—that MEF is liable for the unlawful deduction of the cost of professional liability insurance and/or the cost of obtaining state or local licensing or certification from the wages of the massage therapists working at a California Franchise during the class time period (i.e., since October 15, 2008)—is resolved.  (*See* Olivier Decl. ¶ 15.)  MEF has agreed to create a fund of $325,000 from which to

1   pay Settlement Class Members who timely submit a Qualified Claim to allow any Settlement

2   Class Members who claim to have wrongly paid for the business expenses, which are the subject

3   of this lawsuit, to be reimbursed, at least in part.  (Agreement § III.9.)  Class Members who

4   complete timely claims will share in the settlement fund, which will be distributed on a pro rata

5   basis depending on the total number of claimants and the total value of claims.  The likely range

6   of a claim payment is between $50 and $150.  This amount represents a significant percentage of

7   the value of each Class Member's claim.  In addition, each Class Member continues to maintain

8   any claims he or she may have against the California Franchise for whom the Class Member

9   worked.  The settlement resolves the claims against MEF only.

10          Given the risks and complexities of this case, this monetary settlement represents a fair

11   and reasonable sum to Class Members.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

12   Cir. 2000).

13          The settlement also includes substantial injunctive relief.  MEF also has agreed to

14   continue with its policy, which was implemented in January 2013, that massage therapists

15   employed by a California Franchise are not required to carry professional liability insurance, and

16   to continue to ensure that MEF does not state or imply that it dictates the insurance requirements

17   of any California Franchise's employees, among other things.  (*Id.* § III.10.)  These injunctive

18   provisions respond directly to Plaintiff's allegations that MEF allegedly controlled the California

19   Franchises with respect to professional liability insurance coverage and the payment of the

20   business expenses that are the subject of this lawsuit.  (Compl.)  Importantly, neither Plaintiff nor

21   Class Members waive any claims they may have against any of the California Franchises.  (*Id.*

22   § VIII.25.)  And, of course, Class Members may timely object to or exclude themselves from the

23   Settlement.  (*Id.* § IV.12.)

24          Plaintiff believes that MEF's agreement to create a sizeable fund to provide monetary

25   relief to Settlement Class Members when paired with the injunctive relief described above is

26   more than fair and reasonable under the circumstances.  (*See* Olivier Decl. ¶¶ 14-20, 25, 31.)  The

27   benefit to Class Members therefore favors preliminary approval.

28

00020199.DOC - 1                              13

1    **E.    The Extent of Discovery and Procedural Posture**

2         This matter has been ongoing for more than a year and has advanced beyond the initial

3    stages.   During this time, Plaintiff and MEF have engaged in significant discovery efforts.

4    (Olivier Decl. ¶ 8.)  For example, the parties propounded multiple sets of written discovery and

5    exchanged thousands of pages of documents in anticipation of class certification briefing; indeed,

6    MEF alone produced more than 96,000 pages of documents.  (Olivier Decl. ¶ 8; Sacks Decl. ¶ 6.)

7    Defendant Estep was deposed for two days.  (Olivier Decl. ¶ 8; Sacks Decl. ¶ 6.)  The parties also

8    attended an Early Neutral Evaluation and received valuable feedback from a neutral assigned by

9    the Court regarding the claims in the case.

10        Accordingly, Plaintiff and MEF have been able to assess the relative strengths and

11   weaknesses of their respective positions and to compare the benefits of the proposed Settlement

12   with further protracted litigation.  (Olivier Decl. ¶ 9; Sacks Decl. ¶ 5.)  Therefore, counsel and the

13   Court are more than adequately informed to evaluate the Settlement's fairness.  (Olivier Decl. ¶¶

14   9, 24-25; Sacks Decl. ¶¶ 4-5.); *see also* Conte & Newberg, *Newberg on Class Actions* § 11:41

15   (4th ed. 2004).

16   **F.    The Arms'-Length Settlement Achieved by Experienced Counsel**

17        There is an initial presumption that a proposed settlement is fair and reasonable when it is

18   the result of arm's-length negotiations.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

19   1979) ("The recommendations of plaintiffs' counsel should be given a presumption of

20   reasonableness."); *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983) ("The

21   court should defer to the judgment of experienced counsel who has competently evaluated the

22   strength of his proofs"); 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 at

23   90 (4th ed. 2002).

24        Here, counsel for the Plaintiff (and the proposed Class) and counsel for MEF have

25   extensive combined experience in employment class action litigation.  (*See* Olivier Decl. ¶¶ 3-4;

26   Sacks Decl. ¶ 4.)  Counsel for Plaintiff and MEF each zealously negotiated on behalf of their

27   respective client's best interests and the Settlement was reached only after multiple settlement

28   proposals had been exchanged and rejected.  (*See* Olivier Decl. ¶ 5; Sacks Decl. ¶ 5.)  The

1   Settlement was reached only with the assistance of a private mediator after a full day of

2   negotiations and negotiations that continued during the days thereafter.  (*See* Olivier Decl. ¶ 12;

3   Sacks Decl. ¶¶ 7-9.)

4        The Parties reached complete agreement on the terms of the monetary and injunctive relief

5   for the Class prior to any discussions regarding attorneys' fees, costs, or any enhancement award.

6   (*See* Olivier Decl. ¶ 13; Sacks Decl. ¶ 9.)  Indeed, the Parties spent the entire day of mediation

7   negotiating solely the monetary and injunctive benefit for the Class and did not reach an

8   agreement at the conclusion of the mediation, requiring further negotiations thereafter with the

9   mediator's assistance.  (*See* Olivier Decl. ¶¶ 12-13; Sacks Decl. ¶¶ 8-9.)  The Settlement does not

10  extend to Plaintiff's claims against defendant Estep, nor does it prevent any employee of a

11  California Franchise from prosecuting any claim that may exist against the California Franchise at

12  which an employee worked.  (*See* Olivier Decl. ¶ 21; Sacks Decl. ¶ 5.)  Thus, the lengthy and

13  extensive arm's-length settlement negotiations and the resulting terms reached demonstrate the

14  Settlement's fairness and that the Settlement was not a product of collusion.  (*See* Olivier Decl. ¶

15  25; Sacks Decl. ¶ 5.)

16  **V.    THE COURT SHOULD CERTIFY THE CLASS DEFINED IN THE
          AGREEMENT**

17       The Court's "threshold task is to ascertain whether the proposed settlement class satisfies

18  the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class

19  actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

20  representation."  *Hanlon*, 150 F.3d at 1019.  In addition, "the parties seeking class certification

21  must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Id.* at

22  1022.  Here, Plaintiff proposes certification for settlement purposes pursuant to Fed. R. Civ. P.

23  23(b)(3).  To qualify for certification under this subsection, common questions must

24  "predominate over any questions affecting only individual members," and class resolution must

25  be "superior to other available methods for the fair and efficient adjudication of the controversy."

26  Fed. R. Civ. P. 23(b)(3).

27

28

1    Plaintiff requests that the Court certify the following Class, for purpose of the Settlement:

2    All Massage Therapists who worked at one or more California Massage Envy franchises at any

3    time between October 15, 2008, and January 29, 2014.  (*See* Agreement§ I.F., J.)  Each of the

4    four requirements of Fed. R. Civ. 23(a), are met, as well as the requirements under Fed. R. Civ.

5    23(b)(3).

6    **A.      The Settlement Class Satisfies Fed. R. Civ. 23(a)**

7         **1.      The proposed Settlement Class is sufficiently numerous.**

8    The numerosity requirement is met if the class is so large that joinder of all members

9    would be impracticable.  *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th

10   Cir. 1977).  Courts acknowledge that numerosity will generally exist where the class consists of

11   40 or more members.  *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007).

12   The Parties estimate there are approximately 12,000 Class Members.  (*See* Olivier Decl. ¶ 11;

13   Sacks Decl. ¶ 14.)  Thus, numerosity exists here; the joinder of all Class Members would be

14   impracticable and a class-wide proceeding is preferable.

15        **2.      The commonality requirement is met.**

16   The commonality requirement demands that there be questions of law or fact common to

17   the class.  *See* Fed. R. Civ. P. 23(a)(2); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

18   *One* significant issue common to the class may be sufficient to warrant certification.  *Savino v.*

19   *Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997).

20   Plaintiff alleges that MEF exercised direct control over her wages and the wages of the

21   other Class Members by directing the California Franchises to shift the cost of liability insurance,

22   the application for the California Message Therapy Council Certification or a city or county

23   required license or certification, and for a LiveScan in conjunction with California Therapy

24   Council Certification or a city or county required license or certification to the massage therapists

25   of the California Franchises.  (Compl.)  Plaintiff also alleges that MEF created and enforced

26   policies requiring California massage therapists to carry their own professional liability insurance

27   and to obtain certification.  (*Id.*)  MEF has already clarified its policy that massage therapists

28   employed by California Franchises are not required to carry professional liability insurance and

1    has agreed in the Settlement to continue to ensure that it in no way means to state or imply that it

2    dictates the insurance requirements of any employees at any of the clinics operated by a

3    California Franchise.  These issues are sufficiently common to the Class.  In addition, the

4    Agreement offers an approach that satisfies commonality by reducing each and every Class

5    Member's claim to one common factor: the language of MEF's policies and franchise documents,

6    and offers damages to Class Members who certify under penalty of perjury that (i) he/she was

7    employed as a massage therapist at a California Franchise during the Class Period and (ii) during

8    the Class Period, he/she paid and was not reimbursed for, or had deducted from his/her wages, the

9    cost of professional liability insurance and/or the cost of obtaining state or local licensing or

10   certification as a massage therapist or related expenses.

11                    **3.      The typicality requirement is met.**

12          The typicality requirement requires that the claims of the class representatives be "typical

13   of the claims or defenses of the class."  *See* Fed. R. Civ. P. 23(a)(3).  This requirement is satisfied

14   when "each class member's claim arises from the same course of events, and each class member

15   makes similar legal arguments to prove the defendant's liability."  *Hayes*, 591 F.3d at 1124.

16   Typicality requires only that the representative's claims are "reasonably co-extensive with those

17   of absent class members; they need not be substantially identical."  *Id.*  Typicality exists when the

18   representative plaintiff and the proposed class members challenge the same course of conduct.

19   *CRLA, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *see also Gen. Tel. Co. v.*

20   *Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that typicality and commonality requirements tend

21   to "merge").

22          Here, the requisite nexus for typicality exists between the Plaintiff and the putative Class

23   Members as Plaintiff is asserting the same claims and seeking both monetary and injunctive relief

24   from MEF as the putative Class Members.

25                    **4.      The adequacy requirement is met.**

26          The representative parties must fairly and adequately protect the interests of the class.

27   *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005).  Adequacy is mandated to protect the

28   due process rights of both the absent class members and defendants.  *Rodriguez v. West Publ'g*

1   *Co.*, 563 F.3d 948, 959 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1020 (absent class members

2   must be adequately represented to be bound by a court's judgment).

3          To satisfy the adequacy requirement, two components must be met: (1) the class

4   representative must have no interests antagonistic to the class and be able to prosecute the action

5   vigorously and (2) class counsel must possess the competence to undertake the litigation.  *In re*

6   *Mega Fin'l Corp. Sec. Litig.*, 213 F.3d 454,462 (9th Cir. 2000); *Walter v. Reno*, 145 F.3d 1032,

7   1046 (9th Cir. 1998); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).  Here, Plaintiff has no

8   interests that are adverse or antagonistic to the interests of the Class.  To the contrary, the

9   Settlement provides for across-the-board monetary and injunctive relief that will benefit all

10  Settlement Class Members.

11         Proposed Class Counsel also satisfies the adequacy test based on their experience in

12  complex litigation and class actions.  (Olivier Decl. ¶¶ 3-4.)  Plaintiff's counsel has represented

13  the interests of the proposed Class in discovery and motions practice, settlement negotiations, at

14  an all-day mediation and during the week thereafter, and has vigorously prosecuted this case.  (*Id.*

15  ¶¶ 5-13, 23); *see also Lyons v. Ga.-Pac. Corp. Salaried Emps. Ret. Plan*, 221 F.3d 1235, 1253

16  (11th Cir. 2000) (Finding class counsel that "assert[ed] and defend[ed] the interests of [all] of the

17  [class] members" with "forthrightness and vigor" to be adequate) (citations omitted); *Hanlon*, 150

18  F.3d at 1021 ("We find counsel's prosecution of the case sufficiently vigorous to satisfy any

19  [adequacy] concerns.").  Accordingly, Plaintiff and her counsel are adequate representatives of

20  the proposed Class.

21         **B.        The Class Satisfies the Requirements for Certification Under Rule 23(b)(3)**

22         Rule 23(b)(3) requires that "questions of law or fact common to the members of the class

23  predominate over any questions affecting only individual members."  "In contrast to Rule

24  23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues.

25  When common questions present a significant aspect of the case and they can be resolved for all

26  members of the class in a single adjudication, there is clear justification for handling the dispute

27  on a representative rather than on an individual basis."  *Local Joint Exec. Bd. of*

28

1   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)

2   (internal quotations omitted).

3        Here, there is a common nucleus of facts and available legal remedies among the putative

4   Class Members.  Each claims that business expenses related to their professional liability

5   insurance and/or certification as a massage therapist with the California Therapy Council

6   Certification or a city or county required license or certification was unlawfully deducted from

7   their wages or that they were not reimbursed for such out-of-pocket expenses.  (Compl.)  Any

8   individualized issues are likely few and concern only inconsequential variances in the amount of

9   the alleged improper deduction or unreimbursed business expense.

10       In addition, a Fed. R. Civ. P. 23(b)(3) class action must also be "superior to other

11   available methods for the fair and efficient adjudication of the controversy."  According to Fed.

12   R. Civ. P. 23, a non-exclusive list of matters pertinent to superiority include: (A) the Class

13   Members' interests in individually controlling the prosecution or defense of separate actions; (B)

14   the extent and nature of any litigation concerning the controversy already begun by or against

15   Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims

16   in a particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P.

17   23(b)(3); *see also Local Joint Exec. Bd.*, 244 F.3d at 1163.

18       Lack of a viable alternative to a class action necessarily means that a class action satisfies

19   the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other

20   realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Local Joint*

21   *Exec. Bd.*, 244 F.3d at 1163.  As the Ninth Circuit explained:

22       The superiority requirement is unique to those class actions maintained under Rule
         23(b)(3) . . . . 'Subdivision (b)(3) encompasses those cases in which a class action
23       would achieve economies of time, effort, and expense, and promote uniformity of
         decision as to persons similarly situated, without sacrificing procedural fairness or
24       bringing about other undesirable results.'

25   *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211 (9th Cir. 1975) (*quoting* Fed. R. Civ. P. 23(b)(3)

26   1966 Adv. Comm. Notes).

27

28

1    The only alternative here would be the filing of hundreds of individual lawsuits all of

2    which would require each plaintiff to establish that MEF was his or her joint employer as a

3    condition of recovering at best small dollar amounts for alleged unlawful wage deductions or

4    alleged failure to reimburse for the business expenses that are the subject of this action.

5    However, in cases involving multiple claims for relatively small individual sums—as is the case

6    here—"some—perhaps most—will be unable to proceed as individuals because of the disparity

7    between their litigation costs and what they hope to recover." *Local Joint Exec. Bd.*, 244 F.3d at

8    1163.  This Action permits the putative class to pool claims that would be uneconomical to

9    litigate individually.

10    This Settlement achieves global monetary and injunctive relief while preserving Class

11    Members' ability to pursue any claims they may have against the California Franchise at which

12    each Member worked.  (Agreement§ III, VIII.25.)  Class treatment is obviously superior under

13    the unique circumstances here where MEF will respond to the claims with a ubiquitous monetary

14    and injunctive remedy to the Class.  (*See id.*)

15    **IV.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

16    The Parties have agreed to a proposed notice plan to be administered by the Settlement

17    Administrator (KCC).  (*See* Olivier Decl. ¶¶ 17-18, 21; Sacks Decl. ¶¶ 19-20.)  Notice will be

18    sent to the Class Members via first-class mail and published through a dedicated Internet website.

19    (*See* Olivier Decl. ¶¶ 21-22; Sacks Decl. ¶¶ 19-20.)  The notice plan here entails mailing

20    individual notices to each known Class Member based on the personnel records maintained by

21    each California Franchise at which each Class Member worked.  (Agreement § IV.11.A, C.)  The

22    Settlement Administrator will perform address updates and verifications as necessary before the

23    first Notice mailing and will perform at least a single address follow up on any returned mail

24    using the National Change of Address Database and a Skip-Trace.  (*Id.* § IV.11.D.)

25    **A.    The Proposed Class Notice Satisfies Due Process**

26    When a class is certified under Fed. R. Civ. P. 23(b)(3), "the court must direct to class

27    members the best notice that is practicable under the circumstances, including individual notice to

28    all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2).  The

00020199.DOC - 1                          20

1   notice also must contain the following components "clearly and concisely" and in "plain, easily

2   understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the

3   class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

4   attorney if the member so desires; (v) that the court will exclude from the class any member who

5   requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

6   of a class judgment on members under Rule 23(c)(3). *Id.*

7        Here, the proposed Class Notice does just that. (*See generally* Ex. B to Agreement.)

8   Individual notice will be mailed directly to potential Class Members identified through the

9   employment records of the California Franchise at which each potential Class Member worked.

10  (Agreement § IV.11.A, C.) The Class Notice also provides complete information regarding the

11  material terms of the Settlement; the relief available to Settlement Class Members; the amount of

12  the requested fee and cost award; the proposed enhancement award to Plaintiff; the date, time,

13  and place of the final approval hearing; whom the Class Member should contact for further

14  information; the process for objecting to or opting out of the Settlement; and directs Class

15  Members to browse a dedicated website to review the Notice, Settlement Agreement, Complaint,

16  and to obtain answers to Frequently Asked Questions. (Ex. B to Agreement.)

17       The proposed Class Notice additionally fulfills the requirement of neutrality in class

18  notices. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962-63 (9th Cir. 2009) (noting that

19  "[s]ettlement notices are supposed to present information about a proposed settlement neutrally,

20  simply, and understandably"). It summarizes the proceedings to date and the terms and

21  conditions of the Settlement in an informative, coherent manner. (*See* Ex. B. to Agreement.) The

22  proposed Class Notice clearly states that the Settlement does not constitute an admission of

23  liability by MEF and recognizes that the Court has not ruled on the merits of the Action. (*Id.*) It

24  also states that the final decision regarding settlement approval has yet to be made. (*Id.*)

25       Accordingly, the proposed Class Notice complies with the standards of fairness,

26  completeness, and neutrality required of a settlement class notice disseminated under the Court's

27  authority. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (content and

28  timing of notice satisfied due process).

1

    **B.**    **Absent Class Members Are Afforded the Opportunity to Opt Out**

2

    Due process requires that class members be given an opportunity to opt out.  *Phillips*

3

*Petrol. Co.*, 472 U.S. at 812.  The proposed Class Notice, combined with the right to exclude

4

themselves from the Settlement, ensures that Class Members' due process rights are amply

5

protected.  *See id.*; *In re Diet Drugs Prods Liab. Litig.*, 226 F.R.D. 498, 520 (E.D. Pa. 2005)

6

(individualized notice combined with Internet publication fulfilled the "best notice practicable"

7

requirement under Rule 23(c)(2)).  Class Members will have approximately sixty (60) days in

8

which to exercise this right or object to the settlement, should they choose to do so.

9

**VI.**    **CONCLUSION**

10

    Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate and, as

11

such, merits preliminary approval.  Plaintiff therefore requests that the Court: (1) grant

12

preliminary approval of the Settlement Agreement; (2) certify the Class as specified in the

13

Agreement and described herein; (3) approve the proposed form and method of notice of the

14

settlement to the Class Members; (4) approve the proposed Class Counsel, Class Representative,

15

and Settlement Administrator, and (5) set a hearing for final approval.

16

17

Dated:  January 13, 2013                  DUCKWORTH PETERS LEBOWITZ
OLIVIER LLP

18

19

                                      LANDMAN & MAZZA LLP

20

                                      BY:   */s/ Monique Olivier*

21

                                            Monique Olivier

22

                                        Attorneys for Plaintiff and the

23

                                        Proposed Class

24

25

26

27

28