1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9          NORTHERN DISTRICT OF CALIFORNIA
10             SAN FRANCISCO DIVISION
11
12  YVETTE R. BALDERAS, on behalf of          Case No. 12-cv-06327 NC
    herself and all others similarly-situated,
13
                    Plaintiff,                **ORDER GRANTING**
                                              **PRELIMINARY APPROVAL OF**
14        v.                                  **CLASS ACTION SETTLEMENT**

15  MASSAGE ENVY FRANCHISING, LLC,            Re: Dkt. No. 40
16                  Defendant.
17

18        Before the Court is plaintiff's motion seeking preliminary approval of a class action

19  settlement with defendant Massage Envy Franchising, LLC, certification of the class for

20  purposes of settlement, and approval of class notice.  Because the parties have demonstrated

21  that the proposed class action settlement is fair, adequate, and reasonable, the Court grants

22  plaintiff's motion for preliminary approval of the class action settlement.  The Court also

23  conditionally certifies the class for purposes of settlement and approves the proposed notice

24  to the class.

25                            **BACKGROUND**

26  **A.    Plaintiff's Allegations**

27        This putative class action arises out of defendant's alleged policy of deducting

28  business expenses from plaintiff's wages and failing to reimburse class members for

1  business expenses as required under California Law.  Dkt. No. 1 at 11 ¶ 2.  The putative

2  class consists of massage therapists who work or have worked at defendant's franchise

3  clinics.  *Id.* at ¶ 2.

4      Plaintiff alleges that putative class members were required to purchase and maintain

5  professional liability insurance naming the particular Massage Envy franchise in which they

6  worked as an additional insured.  *Id.* at 14 ¶ 21.  Plaintiff alleges that even though

7  professional liability insurance is a business expense to be borne by the employer,

8  defendants required plaintiff to cover this cost out of pocket by deducting the cost of the

9  professional liability insurance from plaintiff's paychecks.  *Id.* at 14-15 ¶¶ 22, 24.  Plaintiff

10 alleges that this was a franchise-wide requirement that has been uniformly applied to

11 massage therapists at Massage Envy franchises throughout California.  *Id.* at ¶¶ 22-25.

12 Plaintiff contends that because these practices have been required by the franchisor, MEF,

13 MEF is directly liable for the unlawful conduct.  *Id.* at ¶ 26.  Alternatively, plaintiff argues

14 that the franchisees are agents of MEF such that MEF is vicariously liable.  *Id.*

15 **B.  Procedural History**

16     On October 15, 2012, plaintiff filed a putative class action in the Superior Court of

17 Alameda County against Massage Envy Franchising, LLC and Envee Estep Enterprise, Inc.,

18 doing business as Massage Envy of Alameda Towne Centre.  Dkt. No. 1 at 10.  MEF filed

19 its answer to plaintiff's complaint in the Superior Court on December 13, 2012.  Dkt. No. 1

20 at 50-56.

21     On that same day, MEF removed the case to this Court pursuant to 28 U.S.C. §§

22 1332, 1441, and 1446.  Dkt. No. 1 at 2:5-9.  Plaintiff and MEF filed a stipulation to engage

23 in an Early Neutral Evaluation (ENE) on February 27, 2013, Dkt. No. 8, which this Court

24 granted on February 28, 2013, Dkt. No. 9.

25     Plaintiff moved for entry of default on April 19, 2013, as to defendant Envee Estep

26 Enterprise, Inc.  Dkt. No. 18.  On April 23, 2013, the clerk entered notice of entry of default

27 against Envee Estep Enterprise, Inc.  Dkt. No. 19.  On July 18, 2014, plaintiff voluntarily

28 dismissed Envee Estep Enterprise, Inc. as a defendant in the case.  Dkt. No. 60.

On January 13, 2014, plaintiff moved for preliminary approval of a class action settlement reached with defendant MEF. Dkt. No. 40. On January 27, 2014, objectors Nancy Zaher and Haydee Reeves filed an opposition to plaintiff's motion for preliminary approval. Dkt. No. 44. Plaintiff replied on January 28, 2014. Dkt. No. 46. Objectors withdrew their opposition on March 4, 2014 after reaching a monetary settlement with defendant. Dkt. No. 56.

Plaintiff and defendant MEF have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 10, 11.

**C.  Overview of the Settlement Agreement**

Following an all-day mediation session on October 30, 2013, the parties continued to engage in settlement discussions with the mediator's assistance and came up with a term sheet reflecting the agreed-upon terms of settlement. Dkt. No. 40 at 5:12-20. The parties finalized the terms of settlement on January 13, 2014. *Id.* at 5:20-22. The key provisions of the settlement agreement are discussed below.

      **1.  Class Definition**

The settlement agreement defines the "class" as "all massage therapists who worked at one or more California Massage Envy franchises during the Class Period." Dkt. No. 40 at 6. "Class period" is defined as the "time period between October 15, 2008, and the date the Court grants Preliminary Approval of the Settlement." *Id.* The settlement agreement characterizes the settlement class as "[a]ll members of the Class who have not excluded themselves from the Settlement by filing a timely written request for exclusion in accordance with the requirements set forth in the Class Notice." *Id.*

      **2.  Payment to the Settlement Class**

Under the settlement, MEF will create a settlement fund of $504,000.00, less (1) any enhancement award paid to lead plaintiff, and (2) any fee and expense award paid to class counsel, the remainder of which being the "net class benefit." Dkt. No. 40 at 6:11-13. The net class benefit is "not to exceed $325,000.00 in the event that the enhancement, attorneys' fees, and costs awards in the amount set forth are granted." *Id.* at 6:14-16.

Under the agreement, each of the estimated 12,000 class members will be eligible to receive a settlement benefit from the net class benefit to be distributed as follows: (1) class members claiming they paid for professional liability insurance will be entitled to receive up to $150.00 per year for no more than two years of reimbursement; (2) class members who claim they paid for an application for the California Massage Therapy Council Certification or a city or county required license or certification will be entitled to receive up to $150.000; and (3) class members who claim they paid for a LiveScan in conjunction with their California Massage Therapy Council Certification or a city or county required license or certification will be entitled to receive up to $80.00.  Dkt. No. 40 at 6:17-7:7.

Should the amount claimed by class members be greater than or less than the amount of the net class benefit, the agreement states that the settlement administrator will prorate the amount distributed among the class members according to the amounts claimed.  *Id.* at 7:4-7.  No amount of the settlement fund will revert back to MEF, except that the amount of any checks issued to the settlement class members but not cashed within 180 days of issuance will be given to MEF.  *Id.* at 7:13-15.

### 3.    Enhancement Award and Attorneys' Fees and Costs

The settlement agreement provides for a $4,000.00 enhancement to be paid to named plaintiff, Yvette Balderas, and that MEF will not object to the award. Dkt. No. 40 at 8:13-16.  In addition, under the agreement, plaintiff's counsel intends to ask the Court to award attorneys' fees and costs in an amount not to exceed $175,000.00.  *Id.* at 8:19-21.  Under the agreement, MEF has conceded that it will not object provided the attorneys' fees and costs award does not exceed $175,000.00.  *Id.* at 8:22-25.

### 4.    Injunctive Relief

The settlement agreement includes the following injunctive relief: (1) "MEF will continue with its policy implemented in January 2013 that massage therapists employed by its California Franchises are not required to carry professional liability insurance"; (2) "MEF will continue to ensure that materials distributed in its California Franchises in no way state or imply that MEF seeks to dictate or does dictate the insurance requirements of

1   any employee at any California Franchise"; (3) "MEF will ensure that any sample job

2   descriptions for massage therapists that MEF may be [sic] provide to its California

3   Franchises do not require that massage therapists pay for their own professional liability

4   insurance"; (4) "MEF will continue to inform and emphasize to the California Franchises

5   that MEF expects its California Franchises to be familiar with and comply with applicable

6   federal and state employment laws"; and (5) MEF will provide a copy of Labor Code §

7   2802 to all California Franchises and inform them that they need to be familiar with its

8   requirements.  Dkt. No. 40 at 7:26-8:11.

9       **5.    Release of Claims**

10      As part of the settlement, plaintiff agrees to release MEF from all settled claims and

11  execute a waiver pursuant to California Civil Code §1542 with respect to the settled claims.

12  Dkt. No. 40 at 8:27-9:1.  Under the agreement, plaintiff retains her right to pursue claims

13  against Envee Estep or any California franchise that may exist.  *Id.* at 9:1-3.  In addition,

14  under the agreement class members release MEF from any claims that were brought or

15  could have been brought "based upon the allegations that massage therapists were

16  unlawfully required to bear the costs of professional liability insurance, state or local

17  licensing or certification fees, or related expenses . . . ."  Dkt. No. 42-1 at 25.

18      **6.    Class Notice**

19      The parties propose that KCC Class Action Services ("KCC") will administer direct

20  notice to the class.  Dkt. No. 40 at 9:5-6.  MEF agrees to pay all expenses related to notice

21  and tasks the settlement administrator performs.  *Id.* at 9:7-8.  MEF will request that the

22  California Franchises provide directly to the Settlement Administrator a list of current and

23  former employees who are potential class members and their respective contact

24  information.  *Id.* at 9:8-10.

25      The settlement agreement states that the settlement administrator will send notice to

26  the class members via first-class mail, and will perform at least one skip-trace on any notice

27  returned as undeliverable.  *Id.* at 9:13-17.  Upon receipt of new addresses, the settlement

28  administrator will send notices to any newly-obtained addresses.  *Id.* at 9:16-17.  The

class will also receive publication notice through a comprehensive and dedicated website created by the settlement administrator that includes all relevant settlement materials. *Id.* at 9:18-20. The settlement administrator will file a declaration of compliance with the Court affirming that it has completed the tasks assigned to it by the Court and under the agreement. *Id.* at 9:21-23. Class members will be afforded sixty days to elect to opt out from the settlement or to file an objection. *Id.* at 9:23-25.

If more than two percent of the total class members to whom notice is mailed request to exclude themselves from the settlement, the settlement agreement gives MEF the option and sole discretion to cancel the settlement in its entirety. *Id.* at 9:26-10:3.

## DISCUSSION

### A.   Preliminary Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, a settlement should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted). In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions . . . . The settlement must stand or fall in its entirety." *Id.* Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

1
2
3
4
5
6
7
8

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The Court reviews each of the preliminary approval factors in turn.

9

### 1.     The Settlement Process

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court first considers the means by which the parties reached their settlement. Here, the process by which the parties reached their settlement weighs in favor of preliminary certification. The parties reached their agreement after arm's-length negotiations with the assistance of a mediator. Dkt. No. 40 at 11:8-9. Both parties submit that in determining their settlement they considered the substantial risks faced by both parties if they decided to pursue litigation. *Id.* at 11:9-11. Moreover, the mediator declared that during the portion of the negotiation over which he presided, the "quality of representation and advocacy on the part of all counsel involved was ethical and highly professional. Each side aggressively advocated their positions while engaging in a good faith effort to find common ground and make reasonable concessions necessary to achieve an amicable resolution of the matter." Dkt. No. 45 at 3:1-6. The mediator further declared that the attorneys reached the substantive terms of the settlement before discussing the issue of fees, and that based upon his "understanding of the law and the facts of this case, and the issues and arguments raised by each side in the course of the negotiation [] that the settlement which has been presented to the Court represents a fair settlement agreement which takes into account both the risks of proceeding to trial and the benefits derived from resolving the issues without trial for each of the parties." *Id.* at 3:10-24. The settlement thus appears to be the product of serious, informed, non-collusive negotiations. Accordingly, the process by which the parties reached their settlement weighs in favor of

preliminary approval.

### 2. The Presence of Obvious Deficiencies

The Court must next analyze whether there are obvious deficiencies in the settlement agreement. Having reviewed the settlement agreement in detail, the Court finds none.

### 3. Preferential Treatment

The third factor the Court considers is whether the settlement agreement provides preferential treatment to any class member. Here, the net settlement award is to be paid out to each class member based on the unpaid expenses they incurred. The settlement agreement does allow named plaintiff to request an incentive award of $4,000 to compensate her for the time spent and risk assumed in prosecuting this case. But this incentive award to plaintiff, should the Court finally approve it, does not render the settlement unfair, since "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). The Court finds no other indication of unfair treatment to certain members of the class, and therefore this factor supports preliminary approval.

### 4. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Id.* (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)). To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the

class members to the proposed settlement." *Id.*, at \*9 (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  As part of this assessment, the Court must "compare the value of the settlement against the expected recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." *Id.* at \*11 (internal quotation marks omitted).

First, the Court notes that the parties have provided limited information to demonstrate what the class members' maximum recovery might be.  Plaintiff states that "[t]he likely range of a claim payment is between $50 and $150.  This amount represents a significant percentage of the value of each Class Member's claim." Dkt. No. 40 at 13.  But plaintiff does not explain how she calculated the amount of the average claim payment, nor does she state the value of the class's claims or the "significant percentage" that the settlement achieves.  At the hearing, counsel was unable to clarify this issue or to articulate the value of the case.

Without the benefit of that information, the Court estimates the maximum recovery using its own math: each class member could potentially claim they paid for professional liability insurance for two years, and would be entitled to receive $150.00 per year for a total of $300; each class member could claim they paid for an application for the California Massage Therapy Council Certification or a city or county required license or certification and would therefore be entitled to receive up to $150.00; and each class member could claim they paid for a LiveScan in conjunction with their California Massage Therapy Council Certification or a city or county required license or certification and would therefore be entitled to receive up to $80.00.  Dkt. No. 40 at 6:17-7:7.  Therefore, each class member could potentially claim a total of $530 in reimbursements.  If all 12,000 were awarded the full reimbursement amount, the maximum recovery would be $6,360,000.  Thus, the gross settlement amount of $504,000 represents roughly eight percent of the maximum recovery, and the net settlement amount of $325,000 represents just five percent.  This recovery is on the low end of the spectrum for class settlement awards receiving approval.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding

1  a recovery of one-sixth of the potential recovery to be fair under the circumstances); *Greko*

2  *v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26,

3  2013) (twenty-four percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007

4  WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (twenty-five to thirty-five percent).

5      Despite this potential concern, the Court finds that the settlement falls within the

6  range of possible initial approval based on the strengths of plaintiff's case and the risks and

7  expense of continued litigation.  But at the final approval hearing, the parties must be

8  prepared to present evidence that the Court's calculation of the percentage of the maximum

9  recovery is incorrect, or to explain why the especially low recovery is warranted based on

10 the circumstances of this case.  *See Harris*, 2011 WL 1627973, at *13 (initially approving

11 settlement but noting "if the claims rate is low and the aggregate recovery paltry, the Court

12 will likely refuse to [finally] approve the settlement.").

13 **B.  Conditional Certification of the Settlement Class**

14     Class certification requires that: (1) the class be so numerous that joinder of all

15 members individually is 'impracticable;' (2) there are questions of law or fact common to

16 the class; (3) the claims or defenses of the class representative must be typical of the claims

17 or defenses of the class; and (4) the person representing the class must be able fairly and

18 adequately to protect the interests of all members of the class.  Fed. R. Civ. P. 23(a); *Staton*

19 *v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).  In addition to meeting the conditions imposed

20 by Rule 23(a), the parties seeking class certification must also show that the action is

21 maintainable under Federal Rule of Civil Procedure 23(b).  Here, the parties assert that the

22 action is maintainable under Rule 23(b)(3) because questions of law or fact common to

23 class members predominate over any question affecting only individual members, and a

24 class action is superior to other available methods for fairly and efficiently adjudicating the

25 controversy.  Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022.

26     The proposed settlement class appears to meet the requirements for certification under

27 Rule 23(a).  First, the more than 12,000 potential class members are sufficiently numerous

28 that joinder of all members would be impracticable.  Second, there are questions of fact and

1    law common to all class members, such as whether the language of MEF's policies and

2    franchise documents improperly required class members to pay for insurance and

3    certification at their own expense.  Third, plaintiff's claims are identical to those of other

4    class members, and defendant's defenses to plaintiff's claims are typical of defendant's

5    defenses to class members' claims.  Fourth, parties jointly maintain that there are no

6    conflicts of interest between plaintiff and class members, and there are no perceived

7    conflicts with plaintiff's counsel.

8         Further, the proposed class meets the requirements of Rule 23(b).  Considerations of

9    judicial economy favor litigating this case as a class action.  Since this case involves

10   multiple claims for relatively small sums, a class action is superior to an alternative method

11   for adjudicating the parties' claims.  *See Culinary/Bartender Trust Fund v. Las Vegas*

12   *Sands, Inc.*, 244 F.3d 1154, 1163 (9th Cir. 2001) ("if plaintiffs cannot proceed as a class,

13   some-perhaps most-will be unable to proceed as individuals because of the disparity

14   between their litigation costs and what they hope to recover.").  According to the record

15   provided, no potential class member has expressed a desire to proceed independently and no

16   unusual obstacles have appeared that would make managing the class particularly difficult.

17        Therefore, the Court conditionally certifies the class for purposes of settlement.

18   **C.   Notice**

19        The notice to be delivered to class members includes the information required by

20   Rule 23 of the Federal Rules of Civil Procedure.  Specifically, the class notice will describe

21   the nature of the action, the definition of the class, and the class-wide claims.  The notice

22   explains that class members may enter an appearance through an attorney and that the Court

23   will exclude those members requesting exclusion.  The notice also specifies the time

24   requirements and manner of requesting exclusion, as well as the binding effect of a class-

25   wide judgment.  Fed. R. Civ. P. 23(c)(2)(B) (stating that "[t]he notice must clearly and

26   concisely state in plain, easily understood language: (i) the nature of the action; (ii) the

27   definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

28   member may enter an appearance through an attorney if the member so desires; (v) that the

1  court will exclude from the class any member who requests exclusion; (vi) the time and

2  manner for requesting exclusion; and (vii) the binding effect of a class judgment on

3  members under Rule 23(c)(3)").

4      Therefore, the Court approves the proposed notice to the class members.  Dkt. No. 47.

5                                **CONCLUSION**

6      The Court grants preliminary approval of the class action settlement, conditionally

7  certifies the class for settlement, and approves of the proposed form of notice.  The Court

8  also approves the proposed Class Counsel, Class Representative, and Settlement

9  Administrator.  A joint motion for final approval, plaintiff's motion for class representative

10 fee payment and class counsel fees and expenses payment, and the settlement

11 administrator's declaration of due diligence must be filed no later than October 8, 2014.

12 The Court will hold a final approval hearing on October 29, 2014 at 1:00 p.m. in Courtroom

13 A.

14     IT IS SO ORDERED.

15     Date:  July 21, 2014

16 _____
   Nathanael M. Cousins
17 United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28